1  DENNIS M. BROWN, Bar No. 126575
   MARYAM S. KARSON, Bar No. 221184
2  LITTLER MENDELSON
   A Professional Corporation
3  50 West San Fernando Street
   15th Floor
4  San Jose, CA  95113.2303
   Telephone:   408.998.4150
5
   Attorneys for Defendants
6  CLOUDMARK, INC.; KIM MOSS; JAMIE DE
   GUERRE; AND MIKE SMITH
7

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10                          SAN JOSE DIVISION

11 JAMES ALAN BUSH,                    Case No.  C08 01272 PVT

12          Plaintiff,                 **DECLARATION OF KIMBERLY MOSS IN
                                       SUPPORT OF DEFENDANTS' MOTION
13     v.                              TO DISMISS PLAINTIFF'S ACTION, OR
                                       IN THE ALTERNATIVE, FOR SUMMARY
14 CLOUDMARK, KIM MOSS, TOM DOE        JUDGMENT**
   1, MIKE SMITH, JAMIE DE GUERRE,
15 AND DOES 2 TO 5, INCLUSIVE,         Date:       May 27, 2008
                                       Time:       10:00 A.M.
16          Defendants.                Courtroom: 5

17                                     THE HONORABLE PATRICIA V.
                                       TRUMBULL, MAGISTRATE JUDGE
18
            I, Kimberly Moss, declare as follows:
19
            1.    All the information set forth in this declaration is based on my personal and
20
   first hand knowledge.  If called and sworn as a witness, I could and would competently testify to all
21
   the statements made below.
22
            2.    I am the Director of Human Resources of Cloudmark, Inc. and have been
23
   employed in this capacity since September 2005.  I started my professional relationship with
24
   Cloudmark, Inc. in 2004.  Specifically, on March 8, 2004, I was hired by Cloudmark, Inc. as the
25
   Human Resources Manager.  Thereafter, I was promoted to the Director of Human Resources.
26
            3.    Cloudmark, Inc. is a Delaware corporation and was incorporated in
27
   December 2001. Cloudmark, Inc. is qualified to do business in California. Attached as Exhibits "A"
28

and "B" to this declaration are true and correct copies of Cloudmark, Inc.'s Certificate of Incorporation, issued by the state of Delaware, and Certificate of Qualification, issued by the state of California.

4.  Cloudmark, Inc. is a private company and is not affiliated to any degree with local, state or federal governmental entities. Cloudmark is engaged in the business of providing comprehensive messaging security solutions that enables service providers to prevent messaging abuse from impacting their infrastructure, operations and subscribers.

5.  As Cloudmark, Inc.'s Director of Human Resources, I have access to and am familiar with the contents of Cloudmark, Inc.'s current and former employee personnel files, including that of Mr. James Alan Bush, the plaintiff in the above-captioned matter. I also personally knew Mr. Bush as a result of his employment at Cloudmark, Inc. and professionally interacted with him in the course of his employment at Cloudmark, Inc., as a result of which I became familiar with his signature as well.

6.  Mr. Bush is a Caucasian male.

7.  Mr. Bush was first hired by Cloudmark, Inc. as a Technical Writer on May 29, 2004, in the capacity of an independent contractor. Thereafter, on August 18, 2004, Cloudmark, Inc. employed Mr. Bush on a full-time and at-will basis as a Senior Technical Writer.

8.  In 2005, Mr. Bush resigned from his employment at Cloudmark, Inc. In conjunction with his resignation, Mr. Bush entered into a Severance Agreement, which included a release of all claims provision with respect to his employment at Cloudmark, Inc. Attached as Exhibit "C" to this declaration is a true and correct copy of the Severance Agreement and Release that Mr. Bush signed on March 15, 2005.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing statements are true and correct.

Dated this 15th day of April, 2008, at San Francisco, CA.

*/s/ Kimberly Moss*
KIMBERLY MOSS

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
15th Floor
San Jose, CA 95113.2303
408.998.4150

(NO. C08 01272 PVT )   2.

DECLARATION OF KIMBERLY MOSS



*State of Delaware*

## Office of the Secretary of State

PAGE 1

---

    I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF INCORPORATION OF "CLOUDMARK, INC.", FILED IN THIS OFFICE ON THE TENTH DAY OF DECEMBER, A.D. 2001, AT 9 O'CLOCK A.M.

    A FILED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO THE KENT COUNTY RECORDER OF DEEDS.



*Harriet Smith Windsor, Secretary of State*

3466429   8100          AUTHENTICATION: 1494394

010630776                                DATE: 12-11-01

STATE OF DELAWARE
SECRETARY OF STATE
DIVISION OF CORPORATIONS
FILED 09:00 AM 12/10/2001
010630776 - 3466429

# CERTIFICATE OF INCORPORATION

# OF

# CLOUDMARK, INC.

The undersigned, a natural person (the "Sole Incorporator"), for the purpose of organizing a corporation to conduct the business and promote the purposes hereinafter stated, under the provisions and subject to the requirements of the laws of the State of Delaware hereby certifies that:

The name of this corporation is Cloudmark, Inc.

### I.

The address of the registered office of the corporation in the State of Delaware is 9 East Loockerman Street, City of Dover, County of Kent, 19901, and the name of the registered agent of the corporation in the State of Delaware at such address is the National Registered Agents, Inc.

### II.

The purpose of this corporation is to engage in any lawful act or activity for which a corporation may be organized under the Delaware General Corporation Law ("DGCL").

### III.

A.  This corporation is authorized to issue two classes of stock to be designated, respectively, "Common Stock" and "Preferred Stock." The total number of shares which the corporation is authorized to issue is twenty five million (25,000,000) shares. Twenty Million (20,000,000) shares shall be Common Stock, each having a par value of one-tenth of one cent ($.001). Five Million (5,000,000) shares shall be Preferred Stock, each having a par value of one-tenth of one cent ($.001).

B.  The Preferred Stock may be issued from time to time in one or more series. The Board of Directors is hereby expressly authorized to provide for the issue of all of any of the remaining shares of the Preferred Stock in one or more series, and to fix the number of shares and to determine or alter for each such series, such voting powers, full or limited, or no voting powers, and such designation, preferences, and relative, participating, optional, or other rights and such qualifications, limitations, or restrictions thereof, as shall be stated and expressed in the resolution or resolutions adopted by the Board of Directors providing for the issuance of such shares and as may be permitted by the DGCL. The Board of Directors is also expressly authorized to increase or decrease the number of shares of any series subsequent to the issuance of shares of that series, but not below the number of shares of such series then outstanding. In case the number of shares of any series shall be decreased in accordance with the foregoing

sentence, the shares constituting such decrease shall resume the status that they had prior to the adoption of the resolution originally fixing the number of shares of such series.

## IV.

A. The management of the business and the conduct of the affairs of the corporation shall be vested in its Board of Directors. The number of directors which shall constitute the whole Board of Directors shall be fixed by the Board of Directors in the manner provided in the Bylaws.

B. **Election of Directors**

1. Subject to the rights of the holders of any series of Preferred Stock to elect additional directors under specified circumstances, directors shall be elected at each annual meeting of stockholders to hold office until the next annual meeting. Each director shall hold office either until the expiration of the term for which elected or appointed and until a successor has been elected and qualified, or until such director's death, resignation or removal. No decrease in the number of directors constituting the Board of Directors shall shorten the term of any incumbent director.

2. No person entitled to vote at an election for directors may cumulate votes to which such person is entitled, unless, at the time of such election, the corporation is subject to Section 2115(b) of the California General Corporation Law ("CGCL"). During such time or times that the corporation is subject to Section 2115(b) of the CGCL, every stockholder entitled to vote at an election for directors may cumulate such stockholder's votes and give one candidate a number of votes equal to the number of directors to be elected multiplied by the number of votes to which such stockholder's shares are otherwise entitled, or distribute the stockholder's votes on the same principle among as many candidates as such stockholder thinks fit. No stockholder, however, shall be entitled to so cumulate such stockholder's votes unless (a) the names of such candidate or candidates have been placed in nomination prior to the voting and (b) the stockholder has given notice at the meeting, prior to the voting, of such stockholder's intention to cumulate such stockholder's votes. If any stockholder has given proper notice to cumulate votes, all stockholders may cumulate their votes for any candidates who have been properly placed in nomination. Under cumulative voting, the candidates receiving the highest number of votes, up to the number of directors to be elected, are elected.

C. **REMOVAL**

1. During such time or times that the corporation is subject to Section 2115(b) of the CGCL, the Board of Directors or any individual director may be removed from office at any time with or without cause by the affirmative vote of the holders of at least a majority of the outstanding shares entitled to vote on such removal; provided, however, that unless the entire Board is removed, no individual director may be removed when the votes cast against such director's removal, or not consenting in writing to such removal, would be sufficient to elect that director if voted cumulatively at an election which the same total number of votes were cast (or, if such action is taken by written consent, all shares entitled to vote were voted)

and the entire number of directors authorized at the time of such director's most recent election were then being elected.

  2. At any time or times that the corporation is not subject to Section 2115(b) of the CGCL and subject to any limitations imposed by law, Section C.1 above shall not apply and the Board of Directors or any director may be removed from office at any time with or without cause by the affirmative vote of the holders of a majority of the voting power of all then-outstanding shares of capital stock of the corporation entitled to vote generally at an election of directors.

  D. The Board of Directors is expressly empowered to adopt, amend or repeal the Bylaws of the corporation. The stockholders shall also have power to adopt, amend or repeal the Bylaws of the corporation; provided, however, that, in addition to any vote of the holders of any class or series of stock of the corporation required by law or by this Certificate of Incorporation, the affirmative vote of the holders of at least a majority of the voting power of all of the then-outstanding shares of the capital stock of the corporation entitled to vote generally in the election of directors, voting together as a single class, shall be required to adopt, amend or repeal any provision of the Bylaws of the corporation.

V.

  A. The liability of the directors for monetary damages shall be eliminated to the fullest extent under applicable law. If the DGCL is amended to authorize corporate action further eliminating or limiting the personal liability of directors, then the liability of a director of the corporation shall be eliminated or limited to the fullest extent permitted by the DGCL, as so amended.

  B. This corporation is authorized to provide indemnification of agents (as defined in Section 317 of the CGCL) for breach of duty to the corporation and its stockholders through bylaw provisions or through agreements with the agents, or through stockholder resolutions, or otherwise, in excess of the indemnification otherwise permitted by Section 317 of the CGCL, subject, at any time or times that the corporation is subject to Section 2115(b) of the CGCL, to the limits on such excess indemnification set forth in Section 204 of the CGCL.

  C. Any repeal or modification of this Article VI shall be prospective and shall not affect the rights under this Article VI in effect at the time of the alleged occurrence of any act or omission to act giving rise to liability or indemnification.

VI.

  The corporation reserves the right to amend, alter, change or repeal any provision contained in this Certificate of Incorporation, in the manner now or hereafter prescribed by statute, and all rights conferred upon the stockholders herein are granted subject to this reservation.

## VII.

The name and the mailing address of the Sole Incorporator is as follows:

Eric Jensen
c/o Cooley Godward LLP
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306

IN WITNESS WHEREOF, this Certificate has been subscribed this 10th day of December, 2001 by the undersigned who affirms that the statements made herein are true and correct.

ERIC JENSEN
Sole Incorporator



2372377



# State of California

# SECRETARY OF STATE

# CERTIFICATE OF QUALIFICATION

I, BILL JONES, Secretary of State of the State of California, hereby certify:

That on the **8th day of January, 2002**, **CLOUDMARK, INC.**, a corporation organized and existing under the laws of **Delaware**, complied with the requirements of California law in effect on that date for the purpose of qualifying to transact intrastate business in the State of California, and that as of said date said corporation became and now is qualified and authorized to transact intrastate business in the State of California, subject however, to any licensing requirements otherwise imposed by the laws of this State.



IN WITNESS WHEREOF, I execute this
certificate and affix the Great Seal
of the State of California this day
of January 11, 2002.

BILL JONES
Secretary of State

kg

NP-24 A (Rev. 1-96)   98 38011

2372377



# SECRETARY OF STATE

I, *BILL JONES*, Secretary of State of the State of California, hereby certify:

That the attached transcript of __1__ page(s) has been compared with the record on file in this office, of which it purports to be a copy, and that it is full, true and correct.



*IN WITNESS WHEREOF*, I execute this certificate and affix the Great Seal of the State of California this day of

JAN 1 3 2002

Secretary of State

Sec/State Form CE-107 (rev. 9/98)

OSP 01 55358

2372377

# STATEMENT AND DESIGNATION BY FOREIGN CORPORATION

**ENDORSED - FILED**
in the office of the Secretary of State
of the State of California

**JAN 0 8 2002**

BILL JONES, Secretary of State

Cloudmark, Inc.
_____
(Name of Corporation)

_____, a corporation organized and existing under the

laws of ___Delaware_____, makes the following statements and designation:
(State or Place of Incorporation)

1. The address of its principal executive office is 2201 Bridgepointe Parkway #108

   San Mateo, CA 94404

2. The address of its principal office in the State of California is 2201 Bridgepointe Parkway #108

   San Mateo, CA 94404

## DESIGNATION OF AGENT FOR SERVICE OF PROCESS IN THE STATE OF CALIFORNIA
(Complete Either Item 3 or Item 4)

3. (Use this paragraph if the process **agent is** a natural **person**.)

   _____, a natural person residing in the State of

   California, whose complete address is _____

   _____, is designated as agent upon whom process directed
   to this corporation may be served within the State of California, in the manner provided by law.

4. (Use this paragraph if the process **agent is a corporation**.)

   National Registered Agents, Inc. _____, a corporation organized and existing

   under the laws of Delaware _____, is designated as agent upon whom process directed
   to this corporation may be served within the State of California, in the manner provided by law.

**NOTE:** Corporate agents must have complied with Section 1505, California Corporations Code, prior to designation.

5. It irrevocably consents to service of process directed to it upon the agent designated above, and to service of process on the Secretary of State of the State of California if the agent so designated or the agent's successor is no longer authorized to act or cannot be found at the address given.

_____
(Signature of Corporate Officer)

Eric Jensen, Secretary
_____
(Typed Name and Title of Officer Signing)



**State of California**

# SECRETARY OF STATE

# CERTIFICATE OF QUALIFICATION

I, BILL JONES, Secretary of State of the State of California, hereby certify:

That on the **8th day of January, 2002, CLOUDMARK, INC.,** a corporation organized and existing under the laws of **Delaware**, complied with the requirements of California law in effect on that date for the purpose of qualifying to transact intrastate business in the State of California, and that as of said date said corporation became and now is qualified and authorized to transact intrastate business in the State of California, subject however, to any licensing requirements otherwise imposed by the laws of this State.



IN WITNESS WHEREOF, I execute this certificate and affix the Great Seal of the State of California this day of January 11, 2002.

BILL JONES
Secretary of State

kg

NP-24 A (Rev. 1-96)   98 38011



# SECRETARY OF STATE

I, *BILL JONES*, Secretary of State of the State of California, hereby certify:

That the attached transcript of __1__ page(s) has been compared with the record on file in this office, of which it purports to be a copy, and that it is full, true and correct.



*IN WITNESS WHEREOF,* I execute this certificate and affix the Great Seal of the State of California this day of

JAN 1 3 2002

Secretary of State

Sec/State Form CE-107 (rev. 9/98)

OSP 01 55358

2372377

# STATEMENT AND DESIGNATION BY FOREIGN CORPORATION

**ENDORSED - FILED**
in the office of the Secretary of State
of the State of California

JAN 0 8 2002

BILL JONES, Secretary of State

Cloudmark, Inc.
_____ (Name of Corporation)

_____, a corporation organized and existing under the

laws of ___Delaware_____, makes the following statements and designation:
(State or Place of Incorporation)

1. The address of its principal executive office is 2201 Bridgepointe Parkway #108

   San Mateo, CA 94404

2. The address of its principal office in the State of California is 2201 Bridgepointe Parkway #108

   San Mateo, CA 94404

## DESIGNATION OF AGENT FOR SERVICE OF PROCESS IN THE STATE OF CALIFORNIA
(Complete Either Item 3 or Item 4)

3. (Use this paragraph if the process **agent is** a natural **person.**)

   _____, a natural person residing in the State of

   California, whose complete address is _____

   _____, is designated as agent upon whom process directed to this corporation may be served within the State of California, in the manner provided by law.

4. (Use this paragraph if the process **agent is a corporation.**)

   National Registered Agents, Inc._____, a corporation organized and existing

   under the laws of Delaware_____, is designated as agent upon whom process directed to this corporation may be served within the State of California, in the manner provided by law.

**NOTE:** Corporate agents must have complied with Section 1505, California Corporations Code, prior to designation.

5. It irrevocably consents to service of process directed to it upon the agent designated above, and to service of process on the Secretary of State of the State of California if the agent so designated or the agent's successor is no longer authorized to act or cannot be found at the address given.

_____
(Signature of Corporate Officer)

Eric Jensen, Secretary
_____
(Typed Name and Title of Officer Signing)

**EXHIBIT C**

# SEVERANCE AGREEMENT
# AND GENERAL RELEASE OF ALL CLAIMS

This agreement is made between the parties, on the last date set forth below, in San Francisco, California.

## RECITALS:

A.   James Bush's (hereinafter "Employee") employment with Cloudmark, Inc. (hereinafter "the Company") will voluntarily terminate effective March 16, 2005. The Company wishes to provide certain separation benefits to Employee to aid in his transition to other employment in exchange for his agreement to this release.

B.   Employee does not have pending against the Company or any employee, agent, official, or director of the Company any claim, charge, or action in or with any federal, state, or local court or administrative agency.

C.   The parties to this Agreement desire to settle fully and finally any existing or potential differences between them including, without limitation, all tort, discrimination, statutory and common law claims related in any way to Employee' employment and/or the circumstances of the termination of Employee's employment.

## AGREEMENT

1.   This Agreement shall not in any way be construed as an admission by the Company, that it or any of its related entities, agents, officers, employees, or representatives have acted wrongfully with respect to Employee in violation of the common law or in violation of any federal, state or local statute or regulation or any rights of Employee or any other person, and the Company specifically disclaims any liability to or improper conduct toward Employee or any other person on the part of the Company and its related entities, officers, employees, agents, and representatives.

2.   For and in consideration of the commitments and promises made herein, Employee does hereby completely release and forever discharge the Company, its related entities, officers, directors, agents, employees, attorneys, successors and assigns from all claims, rights, demands, actions, obligations, liabilities, and causes of action of any and every kind, nature and character whatsoever, known or unknown, whether based on a tort including but not limited to negligent or intentional tort, contract (implied, oral or written), statute, including but not limited any claim(s) arising under Title VII of the Civil Rights Act of 1964, the Fair Labor Standards Act, the Equal Pay Act of 1963, the Americans With Disabilities Act, the Civil Rights Act of 1866, the Family and Medical Leave Act, the Employee Retirement Income Security Act of 1974, the California Fair Employment and Housing Act, the California Family Rights Act, the California Labor Code or any other federal, state or local law or regulation which Employee may now have,

has ever had, or may in the future have, arising from or in any way connected with Employee's employment by the Company, including but not limited to, Employees termination of employment.

3. As consideration for this Agreement and the promises and commitments contained herein, the Company agrees to compensate Employee as follows:

   a. Employee will receive a lump sum severance payment of $6,167, less appropriate withholdings, which is equivalent to on month worth of Employee's current base salary.

4. Employee hereby agrees and promises that Employee will not file, at any time subsequent to the execution of this Severance Agreement and General Release of All Claims, in any state or federal court or before any state or federal administrative agency any claim or action, which Employee may now have, has ever had, or may in the future have, with respect to any matter pertaining to or arising from Employee's employment or termination of employment with the Company. In addition, Employee waives any and all rights or benefits which Employee may have under the terms of section 1542 of the California Civil Code, which is set forth as follows:

   Section 1542: A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected Employee's settlement with the debtor.

5. It is understood and agreed that this is a full and final release covering all unknown and unanticipated injuries, debts, claims, or damages to Employee which may have arisen, or may arise, in connection with Employee's employment with the Company, as well as those injuries, debts, or damages now known or disclosed which may have arisen, or may arise, in connection with Employee's employment with the Company, as well as those injuries, debts, claims, or damages now known or disclosed which may have arisen, or may arise, from said employment or termination of employment, as described above.

6. Employee shall continue to maintain the confidentiality of all confidential and proprietary information of the Company and shall continue to comply with the terms and conditions of the Employee Proprietary Information and Inventions Agreement between Employee and the Company. Employee acknowledges that all of the terms of the Employee Proprietary Information and Inventions Agreement is unaffected by this Agreement and remains in full force and effect.

7. Employee further agrees that now and forever he will keep the terms and monetary amount of this Agreement completely confidential, and that he will not disclose such to any other person directly or indirectly. As an exception to the foregoing, and the only exception, Employee may disclose the terms and monetary amount of this Agreement to his attorney, tax advisor, accountant and immediate family (defined as and limited to parents, spouse, and siblings) who shall be advised of its confidentiality. Employee further agrees that should he make such

disclosures as provided in the preceding sentence, he is fully responsible for any breach of this confidentiality provision by the individuals to whom he has made such disclosure. Notwithstanding the foregoing, Employee may make such disclosures of the terms and monetary amount of the Agreement as are required by law or as necessary for legitimate enforcement or compliance purposes.

8. Employee hereby relinquishes any employment rights he might have with the Company and any of its related entities, and agrees that the Company or any of its affiliates may reject without cause any application for employment made by Employee.

9. Employee agrees that he will not initiate, join, participate in, encourage or actively assist in the pursuit of any intellectual property, employment, stock related or other legal claims against the Company or its employees or agents, whether the claims are brought on his own behalf or any entity he represents, or on behalf of any other person or entity. Nothing in this Agreement shall preclude Employee from testifying truthfully in any legal proceeding pursuant to subpoena or other valid legal process, in connection with any administrative proceeding or government investigation.

10. Employee further agrees that following the execution of this agreement, he shall avoid and refrain from communicating any disparaging, derogatory, libelous or scandalous statements to any third party regarding the Company or any of its affiliates, subsidiaries, owners, agents, employees, attorneys, and any persons related to or acting on behalf of the Company.

11. Employee represents and agrees:

a. That Employee fully understands Employee's right to discuss all aspects of this Agreement with Employee's personal attorney;

b. That to the extent, if any, Employee desires, Employee has exercised this right;

c. That Employee has been paid all salary and accrued vacation due and owing to him as of the date of his termination;

d. Employee has returned all Company property, documents and other information in his possession, including but not limited to, any files, back-up materials, reports, software, hardware, system passwords, or encryption keys.

12. The parties agree that each party shall be responsible for the payment of its own attorneys' fees, and all other expenses in connection with the matters referred to in this Severance Agreement and General Release of All Claims.

13. This Agreement is made and entered into in the State of California and shall in all respects be interpreted, enforced and governed under the laws of said state. The language of all parts of this Agreement shall in all causes be construed as a whole, according to its fair meaning, and not strictly for or against any of the parties.

14. Should any provisions of this Agreement be declared or be determined by any court or arbitrator to be illegal or invalid, the validity of the remaining parts, terms or provisions shall not be effected thereby and said illegal or invalid part, term or provision, shall be deemed not to be a part of this Agreement.

15. The parties agree that any controversy or any claim of any kind arising out of or relating to this Agreement, including, but not limited to, any claim relating to its validity, interpretation, enforceability or breach, or any claims relating to the breach of any state, federal or local laws prohibiting any form of discrimination, which is not settled by agreement between the parties, shall be subject to binding arbitration in San Francisco County in accordance with the JAMS/Endispute Arbitration Rules and Procedures for Employment Disputes. Either the Employee or the Company may initiate arbitration, but the party demanding arbitration must do so within one year of the time the dispute arose, or else said claim shall be deemed waived. Any arbitration hearings shall be held in San Francisco, California, or another mutually agreeable venue. The award issued by the arbitrator shall be final and binding upon the parties, and judgment on the award may be entered in any court having jurisdiction. Any arbitrator acting hereunder shall not be empowered to add to, subtract from or in any other manner modify, alter, or amend the terms of this Agreement.

16. The parties agree that in any arbitration held to enforce or interpret the terms of this Agreement, and/or should it be necessary for either party to file a petition to compel arbitration, the prevailing party shall be entitled to reasonable attorneys' fees and costs. Said attorney's fees and costs shall extend to any appeal process related hereto and to the enforcement and collection of any court judgment and any execution related thereto.

17. This Severance Agreement and General Release of All Claims incorporates the entire understanding among the parties, and recites the sole considerations for the promises exchanged herein. In reaching this Agreement, no party has relied upon any representation or promise except those expressly set forth herein.

18. This Agreement may be executed in counterparts and each counterpart, when executed, shall have the efficacy of a second original. Photographic or facsimile copies of any such signed counterparts shall be equally admissible as the original in any court of law or arbitration proceeding, and may be used in lieu of the original for any purpose.

Dated: 3-15-05                                     _____
                                                    James Bush

Dated: 5/15/05                                     By: _____
                                                    Cloudmark, Inc.

4.